**PENTHOUSE INTERNATIONAL, LTD. and Boardwalk Properties, Inc., Plaintiffs,**

v.

**DOMINION FEDERAL SAVINGS & LOAN ASSOCIATION and Melrod, Redman & Gartlan, P.C., Defendants.**

**DOMINION FEDERAL SAVINGS & LOAN ASSOCIATION, Third–Party Plaintiff,**

v.

**QUEENS CITY SAVINGS & LOAN ASSOCIATION, Third–Party Defendant.**

No. 87 Civ. 4325 (KTD).

United States District Court, S.D. New York.

Dec. 2, 1987.

Shea & Gould, New York City, for plaintiffs; Milton S. Gould, Joseph Ferraro, Susan B. Ratner, of counsel.

Fine, Tofel, Saxl, Berelson & Barandes, P.C., New York City, for defendants and third-party plaintiff; Robert Tofel, Sherman Saxl, David B. Newman, of counsel.

Nitkin Alkalay Handler & Robbins, New York City, for third-party defendant; Peter C. Alkalay, of counsel.

Kramer, Levin, Nessen, Kamin & Frankel, New York City, for defendant Melrod; Marvin E. Frankel, Ellen R. Nadler, Eric O. Corngold, Jeffrey S. Trachtman, of counsel.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge:

It seems that I come from another generation. It was once thought that the law was one of the highest of callings that a person could have, and a court was regarded as a temple of justice not to be desecrated by a lawyer telling lies. During that era, apparently now past, those called to the law cared for one another as fellow members of the profession. A word of advice to save a colleague from an embarrassing situation, particulary advice from a judge, was accepted with gratitude. Now it seems that such a word of advice will be beaten into a shield to protect those who have profaned the court and who, by their prevarications, have sought to undermine justice.

After watching and listening to Phillip Gorelick testify for perhaps a total of four hours, I thought that much of what he had said was intentionally untrue. I knew that if this was not corrected by the witness I would have to find that he was a liar and that he had committed perjury. I thought that such a finding by a district court could have an adverse impact on him professionally and perhaps even personally. At that point my determination as to his credibility was purely preliminary; it was not set in concrete. Because I have not given up the ideals of my past, I decided to inform his counsel that if I found Gorelick to be a liar I would be obligated to articulate that finding. I did this by showing Gorelick's trial counsel the first line of *United States v. Tramunti*, 377 F.Supp. 1 (S.D.N.Y.1974),

*aff'd in relevant part*, 513 F.2d 1087 (2d Cir.1975), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975), which reads: "John Spurdis is a liar."

If I had made a final determination of Gorelick's credibility I could have remained silent and not given him a chance to redeem himself. The very fact that the conversation occurred can only mean that I made solely a preliminary determination and that good advice was being given to a lawyer by the court.

We must look then to what effect this had on Gorelick. Trial counsel told Gorelick of the conversation and, I am sure, intimated that he (Gorelick) would have to tell the truth. This apparently occurred after Gorelick had finished his direct examination. Attorney Gorelick, who claimed expertise in the law, now claims that he thought he might be sent to jail for perjury and that therefore his nervousness caused the demeanor which I described in my first opinion in this case. Only pure speculation exists as to how this conversation might have so damaged Gorelick's "fragile psyche" that he was unable to tell the truth. Am I to believe this of the man who was chosen by the officers of Dominion Federal Savings & Loan Association ("Dominion") to break up a loan closing by bullying the other participants? Am I to believe this of the man who would make a secret bonus deal so that if he was unsuccessful for his client in breaking up the deal, he and his firm would still be enriched by $150,000 from the other side?

The problem with Gorelick's argument at this point is that much of what he testified to—which I found to be totally incredible— was testified to on his direct examination; at a time when my conversation with Mr. Tofel had not occurred. Gorelick's demeanor was that of a liar during his direct examination when questioned regarding those things about which he had decided to perjure himself. Indeed, often Gorelick attempted to avoid answering questions which were particularly pertinent to the transactions at interest. All of this occurred prior to the time of the conversation.

Counsel for the defendants now contend that they have been denied a fair trial, based on their claim that I made a determination as to credibility prior to the time that the witness finished testifying. This is just not so. The determination as to credibility which caused me to advise counsel for Gorelick as to its possible consequences was not a final determination. Rather, it was made with the hope that I would never have to make a final determination branding Gorelick as a liar. Nonetheless, it is clear from any fair reading of the record that Gorelick lied in many places. Did he really expect me to believe that the people at the Dominion Federal Savings & Loan Association made up their mind to "screw good faith" and break up the deal but did not tell him of that fact when they retained him as replacement counsel only one day before the preclosing conference? This is but one item in the litany of prevarications profferred by Gorelick as trial testimony in this action.

The conversation I had with Mr. Tofel, the record of the trial, and this motion, do not provide grounds for a new trial. Rather, when viewed together they prove that Gorelick's lies constituted knowing, wilfull perjury.

The defendants also raise two other items in an attempt to have this court grant their motion for a new trial: (1) that there is newly discovered evidence of such import that it would change the result of the trial; and (2) that the defendant Melrod was not expecting to be held liable for the full amount.

The newly discovered evidence basically concerns the fact that the plaintiffs were unable to obtain a loan for a period of about five years prior to the time the Queen City Savings & Loan Association ("Queen City") loan was obtained. It appears that this failure to obtain financing was caused by the misbehavior of one Melvin Weinberg, a confidential informant working for the FBI in connection with the ABSCAM matter. Weinberg apparently spread rumors that Guccione had some type of unsavory background and was unable to obtain a gaming license for a casino

in Atlantic City. This apparently started in or about 1979. The fact that these statements were false was brought out in the report published by the United States Senate Select Committee. This report confirmed that Guccione had no organized crime connections and that he had refused Weinberg's pressure to pay bribes. The report was made part of the package which was given to each of the participating banks in the transactions leading up to the Queen City commitment and the breach of that commitment caused by the defendants here.

The facts about the ABSCAM deal clearly were known to the defendants herein and to their counsel. It was mentioned at the time of trial both in testimony and in colloquy. At some time, however, after the start of the present action Guccione decided to sue the United States government for the wrong done to him and plaintiff here by Weinberg in *Guccione v. United States*, 670 F.Supp. 527 (S.D.N.Y.1987). Guccione claimed in that action, as part of his damages, his inability to obtain financing and a "Gaming License" for an Atlantic City casino during the period from 1980 to 1985. That entire period precedes the period for which damages were demanded in this case.

The defendants now claim that if they had known about the *Guccione* matter, they would have raised the defense of preclusion or demanded that Guccione and Penthouse International, Ltd. ("Penthouse") divide up the damages. This overlooks the fact, however, that the two cases are entirely different. The injuries claimed are different: one is for lost profits for the period 1980 to 1985; the other, for the period from 1985 to the present.

The defendants' argument that the *Guccione* action in some way affected their attack on Guccione's credibility lacks substance. They do not deny that they had all of the material underlying the action brought by Guccione; they do not deny that they had all of the other materials available which could impeach Guccione's credibility; and they cannot explain how the existence or non-existence of a lawsuit

brought by Guccione involving another injury at another time could be used by them to attack his credibility. In any event, Guccione's credibility had little to do with the result in this case. Under all the circumstances, the claim by the defendants that they were denied a fair trial because they did not know of the action entitled *Guccione v. United States* is totally without merit.

 The last item raised in this motion for a new trial is a claim by the Melrod law firm that it was denied a fair trial because after the trial was finished I deemed the pleadings amended to make them responsible for all of the damages rather than the approximately $3 million for which they originally thought that they were potentially liable. Like the others, this claim also lacks substance. Somehow the Melrod firm claims that they were unprepared to defend against such a large claim. This ignores the fact that both Melrod and Dominion had but one counsel and he was totally prepared. Loss of the case by defense counsel cannot be attributed to anything other than the fact that the defendants were wholly responsible for the injury which they caused by illegal means. No counsel could change the facts. The one trial counsel for the two parties was as prepared as anyone could have been. Melrod's claim apparently, however, is not that they were unprepared to meet the allegations of the complaint as amended, but rather that they are now unprepared to pay the sum of money for which they have been held liable. Clearly this is not grounds for a new trial.

Having considered all of the arguments raised by both defendants in this matter in their motions for a new trial, the motions are denied.

SO ORDERED.